WIBERG (WITHERELL v.). See Case No. 17,917.

———

## Case No. 17,607.

### WICK v. The SAMUEL STRONG.

[Newb. 187;[1] 6 McLean, 587.]

District Court, N. D. Ohio. July, 1855.

Admiralty Jurisdiction — Liens of Material Men — Construction of State Law — Following State Courts.

1. A question of jurisdiction being a preliminary inquiry, it is proper that it should be brought to the consideration of the court at the earliest opportunity.

2. The district courts of the United States have a general admiralty jurisdiction in rem, in suits brought by material men against foreign ships, and in cases of domestic ships where the local law gives a lien.

[Cited in The Richard Busteed, Case No. 11,764.]

3. The act of the legislature of Ohio entitled "An act providing for the collection of claims against steamboats and other water crafts and authorizing proceedings against them by name," passed February 26, 1840, and the act explanatory thereof, passed February 24, 1848, does not create a lien; it only affords a remedy. These statutes, being in derogation of the common law, should be construed strictly.

[Cited in brief in Thorsen v. The J. B. Martin, 26 Wis. 494.]

4. Where a state statute has received a construction by the supreme state courts, that construction is binding upon the federal courts.

5. The supreme court of the state of Ohio have decided that their water craft law does not create a lien. See Jones v. The Commerce, 14 Ohio, 410.

The schooner Samuel Strong was built at the mouth of Black river, Lorain county, in this state, in the summer of 1847, by citizens of that county. In the course of her construction she contracted a large debt to the libellant [Lemuel Wick], then and still a resident of Cleveland. She was originally registered at the port of Cleveland, and was run by the parties who built her until in or about the month of July, 1848, when her then owners sold one-half of her to parties in Wisconsin, and her registry was changed from the port of Cleveland to the port of Chicago. On the 18th of June, 1855, the schooner, then lying in the port of Cleveland, was attached by the libellant. The present claimants, who allege themselves to be bona fide purchasers and sole owners of the schooner, filed their claim and also their answer, which, among other grounds of defence, excepted to the jurisdiction of the court over the schooner, upon the ground that the statute of this state known as the "Common Carrier" act (Swan, St. p. 185) did not create a lien but conferred a remedy merely. In order to save costs, it was agreed by the counsel that the motion to dismiss the libel should be heard before any steps were taken to substantiate the libellant's claim, or the other grounds of defence.

Otis & Sears, for the motion.
Keith & Coon, against the motion.

WILLSON, District Judge. The libel in this case was filed on the 18th of June, 1855. It seeks to enforce a lien for materials furnished by the libellant, from May to October inclusive, in the year 1847, in the building of said schooner at Black river, in the district of Ohio. The libellant is now, and was in the year 1847, a resident of the city of Cleveland; and in the third article of his libel, he avers among other things, that by the maritime law, and the law of Ohio, a lien is given him in the premises, which he can enforce and by which he can obtain redress in admiralty.

[1] [Reported by John S. Newberry, Esq.]

To the libel a defence is interposed by Walker, Bean & Alvord, claimants, and residents of the state of Wisconsin, who have duly filed their claim, answer and exceptions. The defence made by the pleadings consists of—(1) The statute of limitation, in bar of recovery after the lapse of six years from October, 1847. (2) A judicial sale of the schooner Samuel Strong, by virtue of a decree in admiralty, rendered by the United States district court for Wisconsin, on the 19th of May, 1851, in a cause civil and maritime. (3) That this court has not jurisdiction of the subject matter of this suit.

I have not thought it necessary to examine all the questions which arise out of this record, because from the view I have taken of it, the decision of the cause must turn upon the single question of the jurisdiction of the court, and as the question of jurisdiction is in its nature a preliminary inquiry, it is certainly proper, in whatever form it may be presented, that it should be brought to the consideration of the court at the earliest opportunity, and be decided before incurring expenses which would be rendered fruitless by the dismission of the cause for want of jurisdiction.

It is claimed by the counsel for the libellant in this case, that a maritime lien and a proceeding in rem are correlative, and that wherever a proceeding in rem is competent, a lien exists, and vice versa. This is true beyond a question, when a proceeding in rem in the admiralty court for wages, salvage, collision or bottomry, goes against the ship in the first instance. But this rule does not obtain in the case of a domestic vessel for materials furnished, and when the question of lien depends upon the local statute. This is evident from the language of the 12th rule in admiralty prescribed by the supreme court of the United States. This rule provides that "in all suits by material men for supplies or repairs or other necessaries, for a foreign ship or for a ship in a foreign port, the libellant may proceed against the ship and freight in rem, or against the master or the owner alone in personam. And the like proceedings in rem shall apply to cases of domestic ships, when, by the local law, a lien is given to material men for supplies, repairs or other necessaries." It may, therefore, be laid down as a well established principle of maritime law, fully recognized by the federal judiciary, that the district courts have a general admiralty jurisdiction in rem, in suit, by material men, in cases of foreign ships, or ships of another state; and that in cases of domestic ships no lien is implied, unless the local law gives lien; in which event it may be enforced in the district court. In the case of The General Smith, 4 Wheat. [17 U. S.] 438, the court decided with great clearness that, "when the proceeding is in rem to enforce a specific lien, it is incumbent upon those who seek the aid of the court, to establish the existence of such lien in the particular case. When repairs have been made or necessaries have been furnished to a foreign ship, or to a ship in a port of a state to which she does not belong, the general maritime law, following the civil law, gives the party a lien on the ship itself for security, and he may well maintain a suit in rem in admiralty to enforce his right. But in respect to repairs or necessaries in the port or state to which the ship belongs, the case is governed altogether by the municipal law of that state, and no lien is implied unless it is recognized by that law." The case before us is one where the materials were furnished to a home vessel in her home port, and the question for the court to determine is, whether the law of Ohio gives a lien, for materials furnished in the building of a ship or vessel in this state, which can be enforced in admiralty.

It is claimed by libellant's counsel that such a lien is given by an act of the legislature of Ohio entitled "An act providing for the collection of claims against steamboats and other water crafts, and authorizing proceedings against the same by name," passed February 26, 1840, and the act explanatory thereof, passed February 24, 1848. The first section of the act of 1840 provides "that steamboats and other water crafts navigating the waters within and bordering on this state, shall be liable for debts contracted on account thereof, by the master, owner, steward, consignee, or other agent, for materials, supplies, or labor, in the building, repairing, furnishing or equipping the same, or due for wharfage," &c. In the second section it is provided that "any person having such demand, may proceed against the owner or owners, or master of such craft, or against the craft itself." The next section merely gives directions how to proceed to obtain a warrant of seizure when the craft itself is sued; and the fourth section enjoins upon the clerk to issue a warrant returnable as other writs, directing the seizure of such craft by name or description, as provided in the third section of the act, or such part of her apparel or furniture as may be necessary to satisfy the demand, and to detain the same until discharged by due course of law. These are the main provisions of the statute, at least so far as the statute itself concerns our present inquiry. Does this statute give a lien in the technical legal sense of the term? or in other words, does the lien attach to the water-craft, except on seizure, by virtue of the warrant issued, and in the mode and under the regulations prescribed in the statute?

It was clearly the object of the legislature in passing this act, to subject water craft, of the description named, to be sued, whose owners resided out of the state, or if residents, whose names were unknown to the

creditors. The evil formerly existing, and intended to be remedied by the law, was, that creditors could not always discover the names of the owners; and without having their names they could not bring suit against the person, or by attachment against the property. I regard this law as affording a remedy only. There are no words in the act expressly giving a lien, and in the language of the court in the case of The Huron v. Simmons, 11 Ohio, 458: "The boat's responsibility is not in the nature of a lien." I apprehend that it is the seizure which creates the lien, and that until the water craft is actually taken by warrant, and in the mode prescribed by the law, no lien attaches to the property. This statute is said to be a transcript of the New York statute, under which liens have been enforced by adjudications of the federal courts in admiralty proceedings. The statute of New York provides for proceedings in rem, in almost the precise language of the Ohio statute, except in one important particular. It declares "that ships or vessels of all descriptions, &c., shall be liable for all debts contracted by the master, commander, owner or consignee thereof, on account of any work done, or any supplies or materials furnished by · any mechanic or tradesman, or others on account, or towards the building, repairing, fitting, furnishing or equipping such ships or vessels, and that such debt shall be a lien upon such ship or vessel, her tackle, apparel and furniture, and shall be preferred to all other liens thereon, except for seamen's wages."

These statutes are in derogation of the common law, and by a well established rule should be construed strictly. But I can conceive no rule of construction by which a creditor, with a claim fairly established against a vessel under the New York statute, could be divested of his lien, or be deprived the right of enforcing it in the admiralty. His lien, by law, attaches the moment his debt is contracted. By the Ohio statute, it is provided simply, that the vessel shall be liable, and, as in a case of an execution, a lien is established when seizure is made of the property. The Ohio water craft statute of 1840 was not intended by its authors to become a lien law in the legal sense of the term; had it been so, the legislature would have so declared it, and it is legitimate to look to the subsequent legislation of the general assembly to ascertain the intention of the law making power. The legislature of Ohio, on the 11th of March, 1843, passed "an act to create a lien in favor of mechanics and others in certain cases." In the first section it is provided, that any person who shall perform labor, or furnish materials or machinery, for constructing, altering, repairing any boat, vessel or other water craft, or for erecting or repairing any house, &c., shall have a lien to secure the payment of the same, upon such boat, vessel or other water craft, and upon such

house, &c. This section gives the creditor a specific lien, which, by the act, continues two years from the commencement of the work. It is known, denominated and recognized, as a lien law. If the law of 1840 gave a lien which attached before seizure, what reason or necessity for the act of 1843?

But whatever may be my own views as to the intent and construction of this water craft law, I am bound to follow and adopt the construction given to it by the supreme court of Ohio. In cases depending on the statutes of a state, the federal courts adopt the construction of the state, when that construction is settled or can be ascertained. Chief Justice Marshall, in delivering the opinion of the court in the case of Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 152, remarked that "this court has uniformly professed its disposition in cases depending on the laws of a particular state, to adopt the construction which the courts of the states have given to those laws." This course is founded on the principle supposed to be universally recognized, that the judicial department of every government, where such department exists, is the appropriate organ for construing the legislative acts of government. On this principle the construction given by the courts of the several states to the legislative acts of those states is received as true, unless they come in conflict with the constitution, laws and treaties of the United States. What, then, have been the adjudications upon this question by the supreme court of Ohio? In the early cases in which that court were called upon to give a construction to this act, we find but little to aid in determining the question before us. The first case, 10 Ohio, 384, merely decides that a suit cannot be sustained for debts incurred prior to the passage of the act. The case in 11 Ohio, 438, decides, that suits may be brought under the act for provisions and other necessary supplies. These are the points decided. Yet we find the obiter dicta of the judges delivering the opinion, in the two cases, in direct conflict. In the first case Judge Hitchcock says—"This law gives a lien upon such crafts for certain claims against them." In the second case, Judge Reed says —"The boat's responsibility is not in the nature of a lien." And up to the time of the decision of the case of The Waverly v. Clements, 14 Ohio, 28, this question was regarded as open and unsettled by the supreme court; for the judge, in delivering the opinion of the court in that case, used the following language: "It seems to us entirely unnecessary to decide whether the liability of the boat for the debts contracted on her account, is strictly to be regarded as a lien or not. When it becomes necessary to decide that point, our opinions will be expressed; but sufficient unto the day is the evil thereof." Whatever dicta may be found, therefore, in the reported cases previous to this, should not be regarded as binding authority. In the case

of Jones v. The Commerce, Id. 410, the question was fairly and legitimately raised, and decided with great clearness and ability by the court. I shall make no apology for quoting somewhat at length from the opinion of the court, delivered in that case, by Judge Birchard. After stating the case he proceeds to comment on the language of the act. and says: "The craft 'shall be liable.' These words have sometimes been spoken of as creating a lien for the demand. But these words are not those usually employed in statutes when the legislature intend to create a lien, strictly speaking. The first section of the act regulating judgments and executions (Swan, St. p. 467) provides that 'lands, tenements, goods and chattels shall be subject to the payment of debts, and shall be liable to be taken on execution and be sold.' Here the words are the same, and yet this part of the act has never been construed to create a lien. The owner, notwithstanding this clause, can transfer any of the property named, and clothe the bona fide vendor with a good title, no matter how much he may be indebted. The second section creates a lien: The lands, &c., 'shall be bound' from the date of the judgment: The goods and chattels 'shall be bound' from the time they are seized in execution. Now if the intention had been to create a lien, that is, to bind the boat, instead of creating a liability to mesne process and be substituted as defendant in place of the owners, the fair presumption is, that the words and phrases commonly used to convey that intention, and not those used to convey a different meaning, would have been employed. We therefore declare that the first section of the act does not create a lien. It merely declares a liability, leaving the mode of enforcing it to the subsequent provisions in the act." I have quoted the language used by the court in deciding the case referred to, lest its force might be lost. Aside from its binding authority. I regard the decision as founded on reason and sound principles of law. Neither do I consider its authority invalidated by the case of Webster v. The Andes, 18 Ohio. 187. The language of the court in that case took a wide range, but the question we are now considering was not legitimately involved in its decision.

It is to be regretted that the legislature, in conferring quasi admiralty powers and jurisdictions upon the state courts, should have so framed that act as to deprive a class of creditors (whose interests it evidently sought to advance and protect) from availing themselves of a court of admiralty to enforce their claim: and I have no doubt that the same reasons which induced the passage of the act of 1840, will prompt future legislation to enable the federal as well as the state courts, to carry out the just intentions of the authors of the act referred to.

As the law now is, I am constrained to dismiss this libel for want of jurisdiction.